# ALLSTATE LIFE INSURANCE COMPANY *v.* BFA LIMITED PARTNERSHIP ET AL.
## (SC 18017)

Rogers, C. J., and Norcott, Katz, Vertefeuille and Schaller, Js.

Argued January 14—officially released June 10, 2008

*Daniel J. Klau*, with whom was *Joseph J. Chambers*, for the appellant (plaintiff).

*Richard P. Weinstein*, with whom was *Nathan A. Schatz*, for the appellees (defendants).

*Opinion*

ROGERS, C. J. In this appeal, we are asked to review the trial court's interpretation of an environmental indemnity agreement (indemnity agreement) and a subsequent reaffirmation of the indemnity agreement executed by a lender and borrower as security for a loan and later loan modification. The trial court determined that the reaffirmation of the indemnity agreement did not incorporate the indemnity agreement's durational provisions, but instead supplanted them so that foreclosure of the mortgaged parcel of commercial property used as security for both loans extinguished the borrowers' obligation to pay remediation costs and attorney's fees incurred by the lender due to the environmental contamination of that property. The plaintiff, Allstate Life Insurance Company, the lender, appeals from the trial court's granting of summary judgment in favor of

the defendants,[1] the borrowers. On appeal, the plaintiff argues that the defendants' indemnification obligation was not extinguished by foreclosure because the reaffirmation of the indemnity agreement was a ratification of the indemnity agreement that incorporated its durational terms. We agree and reverse the judgment of the trial court.[2]

The record reveals the following undisputed facts and procedural history. In January, 1991, the plaintiff loaned the defendants $8.2 million and the defendants executed a promissory note secured by a mortgage deed on a parcel of commercial property in Bristol (property). As a loan condition, the plaintiff also required the defendants to execute an indemnity agreement entitled "Environmental Indemnity Agreement" "in order to induce [the plaintiff] to accept the Property as security for the Loan and to enter into the Loan and to disburse the proceeds of the Loan . . . ." Under the indemnity agreement, the defendants were required "to unconditionally indemnify, defend, and hold [the plaintiff] harmless against any loss, liability, damage, expense or claim arising under any Hazardous Material Law . . . [or] . . . resulting from the presence of Hazardous Material on the Property . . . ." Paragraph four of the indemnity agreement provided

---

[1] The defendants include: BFA Limited Partnership, formerly known as State Street Cornerstone Associates Limited Partnership (BFA); The Cornerstone Companies, the successor in interest to BFA; and its principals, Bruce A. Fischman and David G. Sandberg.

[2] The plaintiff has asked this court not only to reverse the judgment of the trial court, but also to remand the case with direction to the court to render summary judgment in favor of the plaintiff. Because the plaintiff did not move for summary judgment before the trial court and raises this claim for the first time on appeal, this issue has not been preserved for appellate review. See Practice Book § 60-5. Additionally, we cannot eliminate, with absolute certainty, the possibility that the defendants could demonstrate to the trial court that there is a genuine issue of material fact or some other reason that the plaintiff is not entitled to summary judgment as a matter of law. Cf. Practice Book § 17-49.

that the defendants' indemnification obligation would continue indefinitely "unless (a) in the case of payment of the Note, [the defendants deliver] to [the plaintiff], after payment of the principal, interest and all other amounts due under the Note, an environmental report in form and substance acceptable to [the plaintiff] from an environmental consultant acceptable to [the plaintiff] showing no violation of Hazardous Material Laws or the presence of any Hazardous Materials on the Property or (b) in the case of a foreclosure or deed-in-lieu of foreclosure, no notice of any violation of the Hazardous Material Laws or the presence of any Hazardous Materials on the Property has been received by the [defendants] from [the plaintiff] within five years after such foreclosure or transfer . . . ."

In 1998, the plaintiff agreed to advance up to $2 million in additional funds to the defendants and to extend the maturity date of the loan. "As a condition precedent to entering into the [loan] restructuring," the plaintiff required the defendants to execute the reaffirmation of the indemnity agreement on April 22, 1998. The reaffirmation of the indemnity agreement provided, inter alia, that "in order to induce [the plaintiff] to enter into the Second Modification Agreement, and in consideration therefor . . . [the defendants] . . . hereby ratify and confirm the provisions, representations, warranties, covenants, obligations and conditions of the Original Environmental Indemnity [Agreement], which shall remain in full force and effect until the full and indefeasible payment of the Notes."

The defendants subsequently defaulted by failing to make payments on the loan, and the plaintiff commenced a foreclosure action on the property. The parties entered into a stipulated judgment of strict foreclosure, and the plaintiff obtained title to the property on January 3, 2002. The plaintiff did not move for a deficiency judgment.

When the plaintiff sold the property on or about May 9, 2003, it was required to comply with the Connecticut Transfer Act, General Statutes § 22a-134 et seq., by performing an environmental site assessment and undertaking remediation of contamination on the property. The site assessment revealed the presence of hazardous materials on the property that required remediation and monitoring, and the plaintiff consequently has incurred in excess of $100,000 in ongoing costs and fees. The defendants refused to indemnify the plaintiff, and the plaintiff brought this action against the defendants to recover its costs and fees, claiming that the defendants had breached both the indemnity agreement and the reaffirmation of the indemnity agreement. The defendants moved for summary judgment and argued that the agreements were no longer in force after the foreclosure of the mortgage on the property. The trial court, *Hon. M. Richard Rittenband,* judge trial referee, rendered summary judgment in favor of the defendants and held that the reaffirmation of the indemnity agreement's durational language "take[s] precedence" over the indemnity agreement's durational provisions in paragraph four. Specifically, the trial court found that, under the reaffirmation of the indemnity agreement, the defendants' indemnity obligation had terminated upon "the full and indefeasible payment of the Notes" when the plaintiff's mortgage on the property was foreclosed. Moreover, the trial court held that, by failing to seek a deficiency judgment, the plaintiff had accepted that the debt was paid in full.[3] The trial court also held, in the

---

[3] Specifically, the trial court found that "[i]f the plaintiff had exercised its right to a deficiency judgment within thirty days, it could then have continued the motion for deficiency judgment in order to obtain an estimate of the costs of the environmental assessment and remediation, which could have been used to reduce the appraised value of the subject premises. That would have increased the deficiency judgment by that amount." The plaintiff challenges this holding and argues that the trial court improperly applied the law governing deficiency judgments. Because we conclude for the reasons stated herein that the foreclosure did not extinguish the defendants' indemnification obligation, however, we need not address this issue.

alternative, that "[a]ssuming arguendo that the [termination] language in [the reaffirmation of the indemnity agreement] does not prevail," the language of the indemnity agreement dealing with duration, waivers, and recourse was in conflict with the durational language in the reaffirmation of the indemnity agreement and that the resulting ambiguity should be resolved against the plaintiff as the drafter of the agreements.[4] This appeal followed.[5]

We begin with well established principles that govern our review of this appeal. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the [defendants'] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Provencher* v. *Enfield*, 284 Conn. 772, 790–91, 936 A.2d 625 (2007).

---

[4] We conclude, and the parties agree, that the trial court improperly applied the doctrine of contra proferentum, under which ambiguity in a document is construed against the drafter, in its alternate holding because the agreements are not ambiguous. See *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 255 Conn. 295, 329, 765 A.2d 891 (2001). Moreover, the court had no evidence before it of the identity of the agreements' drafter, thereby preventing it from construing any ambiguity against the drafter.

[5] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The standard for our review of the trial court's interpretation of the agreements is also well established. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, 269 Conn. 599, 610–11, 849 A.2d 804 (2004). Thus, "[w]hen a party asserts a claim that challenges the trial court's construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous." (Internal quotation marks omitted.) *Ramirez* v. *Health Net of the Northeast, Inc.*, 285 Conn. 1, 13, 938 A.2d 576 (2008). That determination is a question of law that we decide de novo. See *State* v. *Rivers*, 283 Conn. 713, 725, 931 A.2d 185 (2007).

"A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . Accordingly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms"; (internal quotation marks omitted) *Ramirez* v. *Health Net of the Northeast, Inc.*, supra, 285 Conn. 13; and "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Connecticut Light &*

*Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 109, 900 A.2d 1242 (2006). "Furthermore, a presumption that the language used is definitive arises when, as in the present case, the contract at issue is between sophisticated parties and is commercial in nature." *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670, 791 A.2d 546 (2002).

In the present case, we conclude that the language of both agreements is clear and definitive. Moreover, the parties agree in their respective briefs to this court that this appeal presents a question of law.[6] Accordingly, our review is plenary; see id.; *State* v. *Philip Morris, Inc.*, 279 Conn. 785, 797–98, 905 A.2d 42 (2006); and, in determining the intent of the parties to these contracts, we are limited to the express contractual language and the parties' intent as they expressed it in the agreements.[7] *Pesino* v. *Atlantic Bank of New York*, 244 Conn. 85, 94, 709 A.2d 540 (1998).

In this case, in order to know which terms to consider, we first must interpret the language of the reaffirmation of the indemnity agreement to determine whether it incorporated the indemnity agreement, and, if so, to what extent. See *Wilson* v. *Wilson*, 217 Ill. App. 3d 844, 853, 577 N.E.2d 1323 (1991). Our determination of the extent to which the indemnity agreement was incorpo-

---

[6] Although the parties disagree as to the extent that the reaffirmation of the indemnity agreement incorporated the durational provisions of the indemnity agreement, their disagreement does not necessarily compel a conclusion that the agreement is ambiguous. See *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, supra, 269 Conn. 610–11; *Smithfield Associates, LLC* v. *Tolland Bank*, 86 Conn. App. 14, 19, 860 A.2d 738 (2004) ("the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous" [internal quotation marks omitted]), cert. denied, 273 Conn. 901, 867 A.2d 839 (2005).

[7] During the proceedings before Judge Rittenband, the parties did not offer extrinsic evidence of the formation of the agreements. The trial court's determination of the duration of the defendants' indemnification obligation, therefore, was based solely on the language of the two agreements. See *State* v. *Rivers*, supra, 283 Conn. 725 and n.11.

rated, if at all, depends upon whether the durational terms of the two agreements are in conflict with one another. See id., 854–55. This analysis also presents questions of law over which we exercise plenary review. See *Morales* v. *Pentec, Inc.*, 57 Conn. App. 419, 438, 749 A.2d 47 (2000); see also *Cook Biotech, Inc.* v. *ACell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006) ("[w]hether and to what extent material has been incorporated by reference into a host document is a question of law").

"Where . . . the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties." (Internal quotation marks omitted.) *E & F Construction Co.* v. *Rissil Construction Associates, Inc.*, 181 Conn. 317, 319, 435 A.2d 343 (1980); *Randolph Construction Co.* v. *Kings East Corp.*, 165 Conn. 269, 275, 334 A.2d 464 (1973); see also *New Moon Shipping Co., Ltd.* v. *MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997). When parties execute a contract that clearly refers to another document, there is an intent to make the terms and conditions of the other document a part of their agreement, so long as both parties are aware of the terms and conditions of that other document. *Randolph Construction Co.* v. *Kings East Corp.*, supra, 275–76; see also *Batter Building Materials Co.* v. *Kirschner*, 142 Conn. 1, 7, 110 A.2d 464 (1954); *Opportunity, LLC* v. *Ossewarde*, 136 Idaho 602, 607, 38 P.3d 1258 (2002); 17A Am. Jur. 2d 379, Contracts § 391 (2004).

In the present case, the language of the reaffirmation of the indemnity agreement clearly and unambiguously incorporates the indemnity agreement. Specifically, the reaffirmation of the indemnity agreement states that the parties "ratify and confirm the provisions, representations, warranties, covenants, obligations and condi-

tions of the Original Environmental Indemnity [Agreement] . . . ." In determining whether, or the extent to which, the durational provisions of the indemnity agreement were incorporated into the reaffirmation of the indemnity agreement, we will therefore read these two agreements together.

We begin our analysis with the language of the two agreements. As previously noted, paragraph four of the indemnity agreement states that the defendants' indemnification obligation was "indefinite unless (a) in the case of payment of the Note, [the defendants deliver] to [the plaintiff], after payment of the principal, interest and all other amounts due under the Note, an environmental report in form and substance acceptable to [the plaintiff] from an environmental consultant acceptable to [the plaintiff] showing no violation of Hazardous Material Laws or the presence of any Hazardous Materials on the Property or (b) in the case of a foreclosure or deed-in-lieu of foreclosure, no notice of any violation of the Hazardous Material Laws or the presence of any Hazardous Materials on the Property has been received by the [defendants] from [the plaintiff] within five years after such foreclosure or transfer . . . ."

The indemnity agreement very clearly distinguishes between payment of the note as opposed to foreclosure and provides for different durational obligations accordingly. In the event of payment of the note, the plaintiff sought to protect itself by continuing the defendants' indemnification obligation until the defendants provided a clean environmental assessment report showing that the property had not been contaminated. In the event of foreclosure of the mortgage on the property, however, the plaintiff protected itself by requiring the defendants' indemnification obligation to continue until five years had passed with no notice of the property's contamination.

The terms of the reaffirmation of the indemnity agreement state that the parties intended to "ratify and confirm the provisions, representations, warranties, covenants, obligations and conditions of the Original Environmental Indemnity [Agreement]" and thereby "to induce [the plaintiff] to enter into the Second Modification Agreement, and in consideration therefor . . . ." The reaffirmation of the indemnity agreement then provided that "the Original Environmental Indemnity [Agreement] . . . shall remain in full force and effect until the full and indefeasible payment of the Notes." The question presented on appeal is whether the reaffirmation of the indemnity agreement incorporated the durational term of the indemnity agreement governing foreclosure, or whether the phrase "the full and indefeasible payment of the Notes" superseded the durational terms of the indemnity agreement.

In determining the extent to which the parties intended to incorporate the indemnity agreement into the reaffirmation of the indemnity agreement, we must first determine what the parties intended by that incorporation. If the parties incorporated the indemnity agreement for a specific purpose, it is part of the reaffirmation agreement for that purpose only. See *Cruthers* v. *Donahue*, 85 Conn. 629, 631–32, 84 A. 322 (1912) ("[t]he rule seems so well established that it may be said to be elementary that where, in a contract, reference is made to another writing for a particular specified purpose, such other writing becomes a part of the contract for such specified purpose only" [internal quotation marks omitted]); see also *Lodges 743 & 1746, International Assn. of Machinists & Aerospace Workers, AFL-CIO* v. *United Aircraft Corp.*, 534 F.2d 422, 441 (2d Cir. 1975), cert. denied, 429 U.S. 825, 97 S. Ct. 79, 50 L. Ed. 2d 87 (1976); 17A Am. Jur. 2d 379, supra, § 391.

Our review of the language of the reaffirmation of the indemnity agreement reveals that the parties intended to incorporate the indemnity agreement for the purpose of ratifying and readopting its terms. The reaffirmation of the indemnity agreement is entitled "Reaffirmation of Environmental Indemnity Agreement" and states that it is intended to "ratify and confirm the provisions, representations, warranties, covenants, obligations and conditions of the Original Environmental Indemnity [Agreement] . . . ." Because the "language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract"; (internal quotation marks omitted) *Alstom Power, Inc.* v. *Balcke-Durr, Inc.*, supra, 269 Conn. 610; we will interpret this language accordingly. "Reaffirm" is defined as "[t]o affirm or assert again"; "confirm" means "[t]o support or establish the certainty or validity of" or "[t]o make firmer; strengthen"; and the definition of "ratify" is "[t]o approve and give formal sanction to . . . ." American Heritage Dictionary of the English Language (3d Ed. 1992). Moreover, the reaffirmation of the indemnity agreement stated clearly that it was intended "to induce [the plaintiff] to enter into the Second Modification Agreement, and in consideration therefor . . . ." "Induce" is defined as "[t]o lead or move, as to a course of action, by influence or persuasion"; American Heritage Dictionary of the English Language, supra; and "consideration" means "[s]omething promised, given, or done that has the effect of making an agreement a legally enforceable contract." Id. We conclude that, by executing the reaffirmation of the indemnity agreement, the parties intended to strengthen their commitment to the obligations under the indemnity agreement in order to induce the plaintiff to modify the loan by advancing additional funds and extending the maturity date of the loan.

Because the parties intended to incorporate the indemnity agreement into the reaffirmation of the indemnity agreement for the purpose of reaffirming its terms, we interpret the reaffirmation of the indemnity agreement as incorporating the entirety of the indemnity agreement if none of its terms are inconsistent with those of the reaffirmation of the indemnity agreement. See 17A C.J.S. 476, Contracts § 395 (1963) ("[a] new contract with reference to the subject matter of a former one does not supersede the former and destroy its obligations, except in so far as the new one is inconsistent therewith, when it is evident from an inspection of the contracts and from an examination of the circumstances that the parties did not intend the new contract to supersede the old, but intended it as supplementary thereto"); 2 Restatement, Contracts § 408, p. 770 (1932) ("[a] contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term in the earlier contract"); see also, e.g., *Hunter* v. *Wilshire Credit Corp.*, 927 So. 2d 810, 814 (Ala. 2005); *Silver Syndicate, Inc.* v. *Sunshine Mining Co.*, 101 Idaho 226, 235, 611 P.2d 1011 (1979); *Wilson* v. *Wilson*, supra, 217 Ill. App. 3d 853; *Omnicom of Michigan* v. *Giannetti Investment Co.*, 221 Mich. App. 341, 347, 561 N.W.2d 138 (1997); *BACM 2001-1 San Felipe Road Ltd. Partnership* v. *Trafalgar Holdings I, Ltd.*, 218 S.W.3d 137, 147 (Tex. App. 2007), review denied, 2007 Tex. LEXIS 516 (June 1, 2007); 2 Restatement (Second), Contracts §§ 213, 216 (1981). Turning to the indemnity agreement's durational provision governing foreclosure (foreclosure provision)[8] to

---

[8] The defendants argue that the reaffirmation of the indemnity agreement's reference to "full and indefeasible payment" took precedence over *both* durational provisions in the indemnity agreement. They contend that their indemnification obligation would have extinguished upon payment *or* foreclosure without their having to provide, or wait five years for, an environmental assessment report showing that the property had not been contaminated. The plaintiff, on the other hand, argues that the reaffirmation of the indemnity agreement either incorporated *both* of the indemnity agreement's dura-

determine whether it was incorporated into the reaffirmation of the indemnity agreement, we consider to what extent, if any, it is inconsistent with the reaffirmation of the indemnity agreement's reference to "the full and indefeasible payment of the Notes." We conclude that the foreclosure provision is not inconsistent because the reaffirmation of the indemnity agreement is completely silent as to foreclosure. If the reaffirmation of the indemnity agreement had instead read "until the full and indefeasible payment of the Notes *or foreclosure of the property*," *that* provision arguably would be inconsistent with the indemnity agreement's foreclosure provision, which includes a five year waiting period, but because "full and indefeasible payment" is undisputedly *not* foreclosure, the two provisions are not inconsistent. See *Wilson* v. *Wilson*, supra, 854–55 (durational provisions of two agreements, one of which had been incorporated into other, not inconsistent, but could be read together because subsequent agreement was silent as to specific provision of prior agreement).[9]

---

tional provisions or, alternatively, that, at most, the reaffirmation of the indemnity agreement superseded *only* the indemnity agreement's durational provision governing *payment* of the note, but not *foreclosure*. Because this appeal unquestionably involves a foreclosure, the payment provision is not at issue, and so we need not decide what impact, if any, the reaffirmation of the indemnity agreement had on the indemnity agreement's payment provision. Our review will therefore focus only on whether the reaffirmation of the indemnity agreement incorporated the *foreclosure provision* of the indemnity agreement.

[9] In *Wilson*, the question before the Illinois Appellate Court was identical to the question in the case at hand, namely, whether a prior agreement was incorporated by reference into a subsequent agreement, and, if so, whether the durational terms of the prior agreement also were incorporated or whether they were inconsistent with the subsequent agreement. *Wilson* v. *Wilson*, supra, 217 Ill. App. 3d 849–50, 853. The court determined that the subsequent agreement had incorporated the prior agreement expressly by reference, which indicated the parties' intention to make the prior agreement part of the subsequent agreement so that the additional provisions became as much a part of the subsequent contract as if they had been written into it. Id., 853. The court then examined the durational provisions of each agreement to determine whether they were in conflict with one another. The prior agreement provided that "[t]he term of this Agreement shall be

Moreover, because the parties precisely distinguished between payment and foreclosure in the indemnity agreement, we conclude that the parties did not intend to eradicate this distinction in incorporating the indemnity agreement, particularly in the absence of an express statement to that end. See *Charette* v. *Waterbury*, 80 Conn. App. 232, 246–47, 834 A.2d 759 (2003) (declining to interpolate language in agreement in absence of express reference due to agreement's specificity otherwise), cert. denied, 267 Conn. 910, 840 A.2d 1172 (2004); *Randolph Construction Co.* v. *Kings East Corp.*, supra, 165 Conn. 275 (applying principle in contract modification context). We therefore conclude that the indemnity agreement's durational provision governing foreclosure was incorporated into the reaffirmation of the indemnity agreement and remains in full force and effect.

Indeed, it would have been irrational for the plaintiff to lessen its indemnification protection in this context. The defendants' interpretation of the reaffirmation of

for one year . . . and shall be automatically extended . . . unless terminated by written notice from a party . . . within [ninety days] prior to the anniversary of this Agreement." (Internal quotation marks omitted.) Id., 854. The subsequent agreement's durational term was dissimilar; it provided that "[s]ubject to earlier termination, the term of this Agreement shall end upon Substantial Completion . . . of the Improvements . . . ." (Internal quotation marks omitted.) Id. The court rejected the argument that the parties easily could have included the same language from the prior agreement in the subsequent agreement if they had intended to incorporate the same durational provision. Id., 854–55. Instead, the court held that the durational provisions were not inconsistent, and interpreted the agreements together to provide that the parties' obligations, unless terminated under the ninety day terms set forth by the prior agreement, would terminate upon substantial completion of the project. Id., 855. Similarly, in the present case, because the reaffirmation of the indemnity agreement did not refer to foreclosure, we conclude that the parties intended that the defendants' indemnification obligations would continue until terminated either by "the full and indefeasible payment of the Notes" or, if the property was foreclosed upon, by the defendants not receiving notice of any contamination within five years of that foreclosure.

the indemnity agreement would lead to a determination that the plaintiff agreed to extinguish the defendants' indemnification obligation upon foreclosure of the property without requiring that the defendants wait five years for notice of any contamination, resulting in the extinguishment of the defendants' indemnification obligation *regardless* of whether the property had been contaminated. Moreover, the plaintiff would have decreased its protection while exposing itself to greater liability by loaning the defendants up to an additional $2 million and extending the maturity date of the loan. Notably, the loan modification resulted in an increased risk to the plaintiff and *no other benefit* inured to it other than the execution of the reaffirmation of the indemnity agreement. We agree with the plaintiff that, in executing the reaffirmation of the indemnity agreement, it intended to ensure that its indemnity protection continued by confirming and reasserting the validity of the indemnity agreement. We cannot reasonably conclude that the plaintiff would have lessened its indemnification protection in this situation, and the language of the agreements confirms that the parties did not intend such an absurd result. Cf. *Connecticut Medical Ins. Co.* v. *Kulikowski*, 286 Conn. 1, 14, 942 A.2d 334 (2008) (insurance policy not reasonably susceptible to more than one reading in part because defendant's "interpretation would suppose that the plaintiff subjected itself to significant additional liability, without the usual protections of defining that coverage within the policy provisions, and at no additional charge").

In sum, we conclude that, because the parties intended to reaffirm the indemnity agreement by incorporating it in its entirety, and because the indemnity agreement's foreclosure provision is not inconsistent with the reaffirmation of the indemnity agreement's

reference to "full and indefeasible payment," the fore-closure provision remains in effect. Consequently, the defendants' indemnification obligation has not been extinguished by foreclosure of the property because it is undisputed that the defendants received notice of the property's contamination within five years of the foreclosure.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.