******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION *v.* ROGER
ESSAGHOF ET AL.
(AC 45109)

Elgo, Suarez and Bear, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain of the defendants' residential property after they had defaulted on a loan secured by a mortgage deed. The defendants had executed a promissory note in favor of W Co., secured by the mortgage deed, and, subsequently, the plaintiff acquired W Co. and its assets, including the defendants' loan. Following a bench trial in 2015, the trial court rendered a judgment of strict foreclosure in favor of the plaintiff, and the defendants appealed to this court, which affirmed the judgment of the trial court. The defendants then appealed to our Supreme Court, which reversed in part the judgment of this court and ordered the case remanded to this court with direction to reverse the trial court's order directing the defendants to reimburse the plaintiff for certain property taxes and homeowners insurance premiums and to remand the case to that court for the purpose of setting a new law day. On remand, the trial court denied the defendants' motion to dismiss, which was predicated on two alleged deficiencies with the statutory (§ 8-265ee) Emergency Mortgage Assistance Program (EMAP) notice provided by the plaintiff in 2009, a copy of which was introduced into evidence at the trial in 2015. The court then set new law days in accordance with the remand order from the Supreme Court, and the defendants appealed to this court. *Held*:

1. The defendants could not prevail on their claim that the trial court improperly construed the remand order from our Supreme Court in a narrow manner; the directive from the Supreme Court was specific in nature, limited in scope and was clear that this court was ordered to remand the case to the trial court for the purpose of setting a new law day, and this was not a case in which the Supreme Court remanded the matter for further proceedings in accordance with law.

2. The trial court properly denied the defendants' motion to dismiss that claimed that court lacked subject matter jurisdiction over the foreclosure proceeding due to the plaintiff's noncompliance with the EMAP notice requirements set forth in § 8-265ee, as the motion constituted an impermissible collateral attack on the judgment of strict foreclosure: the defendants' first alleged deficiency, that their counsel was unable to obtain tracking information for the EMAP notice on the website of the United States Postal Service for a mailing that was sent twelve years earlier, did not demonstrate an absence of subject matter jurisdiction that made the judgment of strict foreclosure entirely invalid, the court having taken judicial notice of the undisputed fact that the United States Postal Service stores tracking information for certified mail only for a period of two years; moreover, in rendering its judgment of strict foreclosure in favor of the plaintiff in 2015, the court necessarily rejected the second claimed deficiency, namely, that the EMAP notice furnished by the plaintiff bore the name of W Co., the plaintiff's predecessor in interest, rather than that of the plaintiff itself, the defendants thereafter did not request an articulation of the court's judgment in that regard, and, because that claimed deficiency was at issue before the trial court in 2015, it was incumbent on the defendants to raise any claim of error in their prior appeal with respect thereto, which they failed to do, and, as a result, they abandoned that claim; furthermore, this court concurred with the trial court's observation that a motion to dismiss was a procedurally impermissible substitute for failing to appeal the issue.

Argued October 6—officially released December 20, 2022

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., and for other

relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant JPMorgan Chase Bank, N.A., was defaulted for failure to appear; thereafter, the case was tried to the court, *Hon. Kevin Tierney*, judge trial referee; judgment of strict foreclosure, from which the named defendant et al. appealed to this court, *Lavine*, *Mullins* and *Mihalakos*, *Js.*; subsequently, the court, *Hon. Kevin Tierney*, judge trial referee, granted the plaintiff's motion for reimbursement of property taxes and insurance premiums, and the named defendant et al. filed an amended appeal; thereafter, this court affirmed the judgment of the trial court, and the named defendant et al., on the granting of certification, appealed to the Supreme Court, which reversed in part the judgment of this court; subsequently, the court, *Spader*, *J.*, granted the plaintiff's motion to reset law days and denied the motion to dismiss filed by the named defendant et al., and the named defendant et al. appealed to this court. *Affirmed.*

*Ridgely Whitmore Brown*, for the appellants (named defendant et al.).

*Brian D. Rich*, for the appellee (plaintiff).

*Opinion*

ELGO, J. In this foreclosure action, the defendants Roger Essaghof and Katherine Marr-Essaghof[1] appeal from the judgment of the trial court granting the motion of the plaintiff, JPMorgan Chase Bank, National Association, to reset the law days in accordance with a remand order of our Supreme Court. See *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 336 Conn. 633, 653, 249 A.3d 327 (2020). On appeal, the defendants claim that the court improperly (1) construed that remand order in a narrow manner and (2) denied their motion to dismiss predicated on the plaintiff's alleged noncompliance with the Emergency Mortgage Assistance Program (EMAP) notice requirements set forth in General Statutes § 8-265ee (a).[2] We affirm the judgment of the trial court.

The relevant facts are not in dispute. In May, 2006, the defendants executed an adjustable rate promissory note in favor of Washington Mutual Bank, F.A. (Washington Mutual) in the amount of $1.92 million.[3] The loan was secured by a mortgage deed executed by the defendants on residential property in Weston. On June 24, 2008, the defendants executed a loan modification; they defaulted on the loan shortly thereafter. In September, 2008, the plaintiff acquired Washington Mutual and its assets, including the defendants' loan.

The plaintiff commenced this foreclosure action in March, 2009. Following a bench trial in 2015, the court rendered a judgment of strict foreclosure in favor of the plaintiff. The court found that the total debt was more than $3.2 million, while the fair market value of the property was $1.65 million, and set the law days. From that judgment, the defendants appealed to this court.

While that appeal was pending, the plaintiff filed a motion for equitable relief in the trial court, seeking reimbursement from the defendants for property taxes and homeowners insurance premiums paid during the pendency of the appeal. After hearing argument and receiving supplemental briefing from the parties, the court granted the plaintiff's motion. The defendants then amended their appeal to include a challenge to that determination. As a result, two distinct claims were presented to this court in the defendants' prior appeal: (1) whether the trial court improperly rejected their special defenses of fraudulent inducement and unclean hands; and (2) whether the trial court abused its discretion in ordering them to reimburse the plaintiff for property taxes and homeowners insurance premiums paid by the plaintiff during the pendency of the appeal. See *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 177 Conn. App. 144, 146, 171 A.3d 494 (2017), rev'd in part, 336 Conn. 633, 249 A.3d 327 (2020). This court rejected those claims and affirmed the judgment of the

trial court in all respects. See id., 163.

Our Supreme Court subsequently granted the defendants' petition for certification to appeal from that judgment, limited to the issue of whether this court properly had affirmed "the judgment of the trial court ordering the defendants to reimburse the plaintiff for property taxes and homeowners insurance premiums in violation of the provisions of General Statutes § 49-14 . . . ." *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 328 Conn. 915, 915, 180 A.3d 962 (2018). Although that court certified a single question for further review; see *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, supra, 336 Conn. 638 ("we granted the defendants' petition limited to the one issue"); the defendants nonetheless raised *two* claims before the Supreme Court: (1) whether this court improperly had affirmed the trial court's order to reimburse the plaintiff for taxes and insurance premiums; and (2) whether the Supreme Court "should vacate the judgment in its entirety and order a new trial before a different judge because certain statements the trial court made at a hearing . . . call into question the trial court's impartiality . . . ." Id., 638–39.

With respect to the certified issue, the Supreme Court concluded that "the trial court abused its discretion because the relief it ordered is inconsistent with the remedial scheme available to a mortgagee in a strict foreclosure."[4] Id., 635. With respect to the defendants' claim of judicial bias, the court refused to consider the merits of that contention, stating: "We decline to consider the merits of the defendants' second claim because the defendants did not raise the disqualification issue before the trial court or the Appellate Court, and because it is outside the scope of the certified question." Id., 639. The Supreme Court thus reversed in part the judgment of this court and ordered as follows: "[T]he case is remanded to that court with direction to reverse the trial court's order directing the defendants to reimburse the plaintiff for property taxes and homeowners insurance premiums and to remand the case to that court for the purpose of setting a new law day; the judgment of the Appellate Court is affirmed in all other respects." Id., 653.

On August 13, 2021, the plaintiff filed a motion in the trial court to reset the law days in accordance with that remand order. In response, the defendants filed an objection to that motion as well as a motion to dismiss, in which they argued that the trial court lacked subject matter jurisdiction over the foreclosure action due to the plaintiff's alleged failure to comply with the EMAP notice requirements.[5] The court held a hearing on those motions on October 8, 2021. It thereafter issued a memorandum of decision in which it denied the defendants' motion to dismiss and set new law days in accordance with the remand order from the Supreme Court. From

that judgment, the defendants now appeal.

## I

We first address the defendants' contention that the trial court improperly construed the remand order from the Supreme Court in a narrow manner. A determination as to the scope of a remand order presents a question of law, over which our review is plenary. See *State* v. *Brundage*, 320 Conn. 740, 747, 135 A.3d 697 (2016). As the Supreme Court has explained, "[i]t is the duty of the trial court on remand to comply strictly with the mandate of [an] appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered . . . ." (Internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 65, 689 A.2d 1097 (1997). The remand order from the Supreme Court in this case could not be more clear—this court was ordered to "remand the case to [the trial] court for the purpose of setting a new law day . . . ." *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, supra, 336 Conn. 653. This is not a case in which our Supreme Court remanded the matter for further proceedings in accordance with law. See, e.g., *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 323, 948 A.2d 318 (2008). Here, the directive was specific in nature and limited in scope. We, therefore, reject the defendants' claim that the trial court narrowly construed the remand order from the Supreme Court when it granted the plaintiff's motion to set new law days.

## II

The defendants also argue that, because the EMAP notice requirements, when applicable, operate as a "condition precedent" to a court's exercise of jurisdiction over a foreclosure action, the court improperly denied their motion to dismiss. This court has held that noncompliance with the EMAP notice requirements deprives a trial court of subject matter jurisdiction over a foreclosure proceeding. See *Pennymac Corp.* v. *Tarzia*, 215 Conn. App. 190, 202, 281 A.3d 469 (2022); *MTGLQ Investors, L.P.* v. *Hammons*, 196 Conn. App. 636, 646, 230 A.3d 882, cert. denied, 335 Conn. 950, 238 A.3d 21 (2020). Relying on the precept that an issue of subject matter jurisdiction may be raised at any time; see, e.g., *Oxford House at Yale* v. *Gilligan*, 125 Conn. App. 464, 473, 10 A.3d 52 (2010); the defendants claim that the court improperly concluded that their motion to dismiss constituted an impermissible collateral attack on the judgment of strict foreclosure rendered in 2015. We do not agree.

As this court has observed, "[o]ur jurisprudence . . . has recognized limits to raising a collateral attack setting forth a claim of lack of subject matter jurisdiction. . . . Although challenges to subject matter jurisdiction may be raised at any time, it is well settled that [f]inal

judgments are . . . presumptively valid . . . and collateral attacks on their validity are disfavored. . . . [U]nless a litigant can show an absence of subject matter jurisdiction that makes the prior judgment of a tribunal entirely invalid, he or she must resort to direct proceedings to correct perceived wrongs . . . . A collateral attack on a judgment is a procedurally impermissible substitute for an appeal. . . . [A]t least where the lack of jurisdiction is not entirely obvious, the critical considerations are whether the complaining party had the opportunity to litigate the question of jurisdiction in the original action, and, if he did have such an opportunity, whether there are strong policy reasons for giving him a second opportunity to do so. . . . Our Supreme Court [has] explained that such a collateral attack is permissible only in rare instances when the lack of jurisdiction is entirely obvious so as to amount to a fundamental mistake that is so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority . . . [or] the exceptional case in which the court that rendered judgment lacked even an arguable basis for jurisdiction." (Citations omitted; internal quotation marks omitted.) *Rider* v. *Rider*, 200 Conn. App. 466, 479–80, 239 A.3d 357 (2020); see also *Hirtle* v. *Hirtle*, 217 Conn. 394, 401–402, 586 A.2d 578 (1991) (party advocating collateral attack on judgment bears "burden to prove the existence of a jurisdictional deficiency").

The defendants' motion to dismiss is predicated on two alleged deficiencies with the EMAP notice provided by the plaintiff in 2009, a copy of which was introduced into evidence at trial in 2015. The first requires little discussion, as the defendants claim that "when one searches the certified number . . . on the United States Postal Service's tracking website, [as the defendants' counsel] did on August 17, 2021, the website responds with a message indicating 'Label created, not yet in system.' " In its memorandum of decision, the trial court rejected that claim, taking judicial notice of the undisputed fact that the United States Postal Service only stores tracking information for certified mail for two years.[6] See, e.g., *Trustees of The Park Place Condominium Trust* v. *Basic Devices, LLC*, Docket No. 15-P-1427, 2016 WL 7161971, *2 n.5 (Mass. App. December 8, 2016) (decision without published opinion, 90 Mass. App. 1119, 65 N.E.3d 32) (taking judicial notice of fact that "[t]he United States Postal Service only keeps records of certified mail tracking information for 'up to two (2) years' "); *My Way B & G, Inc.* v. *Director, Division of Taxation*, Docket No. A-0583-17T2, 2019 WL 2427514, *3 n.3 (N.J. Super. App. Div. June 11, 2019) ("the United States Postal Service only maintains tracking records for two years after the delivery"). The mere fact that the defendants' counsel was unable to obtain tracking information in 2021 for a mailing that was sent twelve years earlier[7] does not demonstrate an

absence of subject matter jurisdiction that makes the judgment of strict foreclosure entirely invalid. See *Rider* v. *Rider*, supra, 200 Conn. App. 479.

In their motion to dismiss, the defendants also claim that the trial court lacked jurisdiction over this foreclosure action because the notice furnished by the plaintiff bore the name of Washington Mutual, the plaintiff's predecessor in interest, rather than that of the plaintiff itself. The record before us indicates that the issue of whether the plaintiff complied with the EMAP requirements in this regard was disputed by the parties at trial. Indeed, the March 4, 2015 trial transcript contains the testimony of a witness offered by the plaintiff regarding the notice provided to the defendants and the names used therein.[8] In their July 1, 2015 posttrial brief, the defendants specifically argued that the EMAP notice in evidence "was not from the plaintiff, it was from a nonexistent entity . . . which many months before the January, 2009 notice, had ceased to exist . . . . Its assets were sold to the plaintiff but the entity was gone." Significantly, the defendants at that time alleged that "[t]he notice was deficient for that reason." The defendants further argued that, as a result of that deficiency, "the plaintiff has failed to satisfy a condition precedent to mortgage foreclosure and the case should fail for that reason."

In rendering a judgment of strict foreclosure in favor of the plaintiff, the trial court necessarily rejected that claimed deficiency in the notice furnished by the plaintiff. See *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 190 n.1, 932 A.2d 467 (2007) (when decision lacks specificity, Appellate Court presumes trial court made necessary findings and determinations supported by record on which judgment is predicated), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008). The defendants thereafter did not request an articulation of the court's judgment in that regard. See *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 739 n.25, 937 A.2d 656 (2007) ("in the absence of an articulation . . . [an appellate court will] presume that the trial court acted properly").

Because that claimed deficiency was at issue before the trial court in 2015, it was incumbent on the defendants to raise any claim of error in their appeal with respect thereto. That they failed to do. As a result, the defendants abandoned that claim. See *Marlborough* v. *AFSCME, Council 4, Local 818-052*, 309 Conn. 790, 795 n.5, 75 A.3d 15 (2013) (claim raised by party at trial deemed abandoned when trial court did not specifically address claim and party "has not raised that issue on appeal" before either Appellate Court or Supreme Court); *Czarnecki* v. *Plastics Liquidating Co.*, 179 Conn. 261, 262 n.1, 425 A.2d 1289 (1979) ("claims of error not briefed are considered abandoned").

In denying the defendants' motion to dismiss, the

court remarked that "it is entirely inappropriate to collaterally attack a judgment when the issue raised today was raised at the trial [in 2015] and not preserved for appeal. This motion to dismiss is a procedurally impermissible substitute for failing to appeal on this issue." We concur with that observation. As our Supreme Court has explained, "even litigation about subject matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal." (Internal quotation marks omitted.) *Investment Associates* v. *Summit Associates, Inc.*, 309 Conn. 840, 855, 74 A.3d 1192 (2013). This is not a case in which a party is seeking to raise a jurisdictional challenge for the first time on remand from the Supreme Court. See *Noble* v. *White*, 85 Conn. App. 233, 237, 857 A.2d 362 (2004). Here, the defendants contested the jurisdictional issue of the plaintiff's compliance with the EMAP notice requirements before the trial court in 2015, claiming that "the plaintiff has failed to satisfy a condition precedent to mortgage foreclosure and the case should fail" due to the fact that the EMAP notice to the defendants did not specify the plaintiff's name.[9] The trial court did not agree and rendered a judgment of strict foreclosure in favor of the plaintiff. Although the defendants appealed from that judgment to this court and later amended that appeal to include an additional claim, they did not raise any claim with respect to the jurisdictional issue of the plaintiff's compliance with the EMAP notice requirements. That appeal ultimately was resolved by our Supreme Court, which rendered a final judgment and remanded the case to the trial court "for the purpose of setting a new law day . . . ." *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, supra, 336 Conn. 653. In such circumstances, a second bite at the proverbial apple is unwarranted. We, therefore, conclude that the court properly denied the defendants' motion to dismiss and set new law days in accordance with the remand order of our Supreme Court.

The judgment is affirmed and, in accordance with our Supreme Court's remand order, the case is remanded for the sole purpose of setting new law days.

In this opinion the other judges concurred.

[1] The plaintiff, JPMorgan Chase Bank, National Association, acquired Washington Mutual Bank, F.A., the originator of the note and mortgage from which this foreclosure action arises. Washington Mutual Bank, F.A., also held a junior lien with respect to the mortgage that was foreclosed in this action. As a result, JPMorgan Chase Bank, N.A., also was named as a defendant in this action. Because JPMorgan Chase Bank, N.A., was defaulted for failure to appear as a defendant and is not a party to this appeal in that capacity, we refer to Roger Essaghof and Katherine Marr-Essaghof collectively as the defendants and individually by name.

[2] Although the statement of issues in the defendants' principal appellate brief includes multiple claims, the brief does not include an "argument, divided under appropriate headings into as many parts as there are points to be presented, with appropriate references to the statement of facts or to the page or pages of the transcript or to the relevant document"; Practice Book § 67-4 (e); nor does it include "on *each point* . . . a separate, brief

statement of the standard of review the appellant believes should be applied." (Emphasis added.) Id. Indeed, the defendants expressly state in the "Argument of Law" portion of that brief that "[a]ll five [claims listed in the statement of issues] are addressed in this subsection . . . ." Nowhere in their brief do the defendants identify an applicable standard of review. As a result, it is difficult to discern any coherent analysis from much of the defendants' brief in the present case. See *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn. App. 402, 407, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

In their statement of issues, the defendants also argue that the court improperly denied their request for an evidentiary hearing and improperly applied a uniform foreclosure standing order, which we note are governed by the abuse of discretion standard of review. See *Customers Bank* v. *CB Associates, Inc.*, 156 Conn. App. 678, 695–96, 115 A.3d 461 (2015); *Norwich* v. *Norwich Harborview Corp.*, 156 Conn. App. 45, 52, 111 A.3d 956 (2015). The defendants have not provided any analysis or legal authority to substantiate those bald assertions. Accordingly, we decline to review those inadequately briefed claims. See *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 51 n.23, 861 A.2d 473 (2004) ("[i]nasmuch as the plaintiffs' briefing of the . . . issue constitutes an abstract assertion completely devoid of citation to legal authority or the appropriate standard of review, we exercise our discretion to decline to review this claim as inadequately briefed"); *Gorski* v. *McIsaac*, 156 Conn. App. 195, 209, 112 A.3d 201 (2015) ("We are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." (Internal quotation marks omitted.)).

Although § 8-265ee has been amended since the events underlying this appeal; see, e.g., Public Acts 2009, No. 09-219, § 29; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] As this court noted in the defendants' prior appeal, "Roger Essaghof [is] a highly experienced real estate investor who had negotiated numerous residential and commercial mortgages . . . ." *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 177 Conn. App. 144, 148, 171 A.3d 494 (2017), rev'd in part, 336 Conn. 633, 249 A.3d 327 (2020).

[4] As the court explained, "when the defendants defaulted on their payment obligations, and the plaintiff elected strict foreclosure as its remedy, the plaintiff chose a remedial scheme that prescribes a specific and exclusive process by which it could be made whole. At the conclusion of this process, assuming the defendants do not redeem, their equity of redemption will be extinguished by the passing of the law days, and absolute title to the property will vest in the plaintiff. If the debt exceeds the value of the property, the plaintiff may then pursue the difference from the defendants in a deficiency proceeding pursuant to § 49-14. The deficiency judgment is the only procedure available to the plaintiff to recover its mortgage debt, including payments advanced to pay real estate taxes and property insurance, in excess of the value of the property." *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, supra, 336 Conn. 650.

[5] More specifically, the defendants alleged that the EMAP notice furnished by the plaintiff in the present case (1) was not sent by certified mail and (2) bore the name of Washington Mutual, rather than the plaintiff.

[6] In an objection filed more than one month prior to the October 8, 2021 hearing on the defendants' motion to dismiss, the plaintiff asked the court to take judicial notice "of the practices and policies of the United States Postal Service as they pertain to tracking information." Appended to that objection as an exhibit was a copy of a "Tracking Guide" promulgated by the United States Postal Service, which states that records of tracking and delivery confirmation for certified mail are kept for "[u]p to [two] years."

[7] The plaintiff's sworn affidavit of compliance with EMAP requirements, which was admitted as an exhibit at trial in 2015, states in relevant part that the plaintiff mailed a notice "containing all of the information required by [§ 8-265ee (a)]" on January 6, 2009.

[8] The March 4, 2015 transcript contains the following colloquy between the plaintiff's attorney and the witness Wilkin Rodriguez:

"Q. Can you tell me, after [the plaintiff] purchased the assets of Washington Mutual, whether [the plaintiff] continued to use the name of Washington Mutual for some time after?

"A. Yes. The Washington Mutual name was kept for servicing purposes for a while after the merger. It took a while to integrate the servicing platforms for the two companies so a lot of the customers were still receiving mail under the Washington Mutual name. We had several duplicate loan numbers and things of that nature that had to be straightened out before everybody began being serviced under [the plaintiff's name].

"Q. So is it your understanding, based on that, that [the January 6, 2009 notice to the defendants] was issued by [the plaintiff] in the name of Washington Mutual?

"A. That's correct."

[9] At oral argument before this court, the defendants were asked if it was their position that that the EMAP notice never was sent. The defendants' counsel at that time conceded that the notice had been sent but maintained that said notice was "invalid" because it did not bear the name of the plaintiff.

———————————————