LOCAL 1078, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, U.A.W.–C.I.O. *v.* ANACONDA AMERICAN BRASS COMPANY

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued June 5—decided July 27, 1962

*William J. Larkin 2d,* for the appellant (defendant).

*Peter Marcuse,* for the appellee (plaintiff).

SHEA, J. The plaintiff applied to the Superior Court for an order vacating an award made in an arbitration between the plaintiff and the defendant. The court granted the application and vacated the award. The defendant has appealed.

In October, 1956, the parties entered into a collective bargaining agreement with respect to rates of pay, hours of work and other conditions of employment for the employees of the defendant who were represented by the plaintiff. In 1957, the defendant began to equip a small area in one of its mills for the production of copper tubing. At the outset, a five-die drawbench was used. The plaintiff claimed that a foreman was doing certain tasks which, in other parts of the mill, were usually performed by section men. Section men are in the bargaining unit, while foremen are not. The plaintiff filed a grievance, claiming that the defendant was violating article VI, § 9, of the contract, which reads as follows: "It is understood that the services of non-bargaining unit personnel will in no case be used to deprive bargaining unit employees of overtime work or for the purpose of replacing bargaining unit employees. It is the intention of the Company not to have non-bargaining unit employees

perform duties customarily performed by bargaining unit employees." The defendant replied to the grievance as follows: "After considerable discussion regarding the charge in this grievance, it was brought out that the main reason for the grievance is the activity of salaried foremen in the vicinity of the new five die bench. As more operations are started up, other arrangements will be made."

Disposition of the grievance was held up pending the addition of new equipment. This took place the following summer, when a three-die drawbench was installed. The plaintiff again requested the defendant to assign a section man, but the request was rejected, reactivating the grievance which the parties designated as "grievance No. 80." Thereupon, the parties submitted the following issue to arbitration: "Under the terms of the applicable Collective Bargaining Agreement is the Company's present operating practice in the bay which includes Benches 69 and 70 and associated equipment of the East Tube Mill in violation of Article VI, Section 9?" The arbitrator rendered the following award: "The Company's present operating practice in the bay which includes Benches 69 and 70 and associated equipment of the East Tube Mill does not violate Article VI, Section 9 so long as the work involved does not occupy the major portion of the foreman's time. Grievance No. 80 is dismissed."

The court vacated the award on the ground that the arbitrator had exceeded his powers by rendering a decision outside the scope of the question submitted. It is a truism frequently stated by this court that the charter of an arbitrator is the submission, and no matter outside the submission may be included in the award. The basic test of the validity of an award lies in its conformity to the terms of

the submission. *New Britain Machine Co.* v. *Lodge 1021,* 143 Conn. 399, 404, 122 A.2d 786; *Local 63, Textile Workers Union* v. *Cheney Bros.,* 141 Conn. 606, 613, 109 A.2d 240; *American Brass Co.* v. *Torrington Brass Workers' Union,* 141 Conn. 514, 521, 107 A.2d 255.

Article X of the contract gave to an arbitrator jurisdiction over the interpretation as well as the application of the agreement, and his decision was to be "final and binding on both parties." However, in making his award, the arbitrator could not exceed his powers. General Statutes § 52-418 (d); *International Brotherhood* v. *Trudon & Platt Motor Lines, Inc.,* 146 Conn. 17, 23, 147 A.2d 484. The question submitted by the parties was specific in form and could have been answered with precision and exactitude. It required a clear, unequivocal answer as to "the Company's present operating practice." The arbitrator was not requested to give any opinion concerning other possible practices, nor was he called on to furnish the parties with a guide for their future operations. The award, when it stated that the present operating practice "does not violate . . . [the contract] so long as the work involved does not occupy the major portion of the foreman's time," went beyond the question submitted. The arbitrator not only answered the question submitted but he also defined a course of conduct which could be followed in the future. Since the award exceeded the scope of the submission, it cannot be upheld. *Local 63, Textile Workers Union* v. *Cheney Bros.,* supra.

The defendant concedes that a portion of the award contains unnecessary statements but suggests that the court should modify or correct the award by rejecting the imperfect portion of it. As

authority for such an action, the defendant relies on § 52-419 (c) of the General Statutes. Although it is true that this statute authorizes the correction of an award by the Superior Court, correction is made only on the timely application of a party to the arbitration. Here, the defendant failed to apply to the Superior Court for relief under § 52-419 (c). The correction which it now suggests cannot be made. See General Statutes § 52-420.

There is no error.

In this opinion KING, MURPHY and ALCORN, Js., concurred.

BALDWIN, C. J. (concurring). I do not understand the opinion of the majority to mean that every award of an arbitrator which looks to the future relationship of the parties to a collective bargaining agreement is necessarily invalid for that reason. We have long endorsed a policy favoring arbitration as a means of resolving labor-management disputes. See *United Electrical Radio & Machine Workers* v. *Union Mfg. Co.*, 145 Conn. 285, 288, 141 A.2d 479; *Local 63, Textile Workers Union* v. *Cheney Bros.*, 141 Conn. 606, 612, 109 A.2d 240, cert. denied, 348 U.S. 959, 75 S. Ct. 449, 450, 99 L. Ed. 748; *Colt's Industrial Union* v. *Colt's Mfg. Co.*, 137 Conn. 305, 309, 77 A.2d 301. Arbitration of such disputes involves the resolution of many detailed problems of the labor-management relationship. These problems are often not specifically foreseen, or at least they are often not expressly provided for by the contract negotiators. The negotiators, however, are presumed to have left these problems to be resolved by reference to the long-standing practices of the industry and the shops covered by the contract. Sofar as these prac-

tices, the "common law of the shop," are not inconsistent with the express provisions of the contract, they are an equally valid source of law for the arbitrator. *United Steelworkers* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 580-82, 80 S. Ct. 1347, 1363, 4 L. Ed. 2d 1409, 1432; *Posner* v. *Grunwald-Marx, Inc.,* 56 Cal. 2d 169, 177, 363 P.2d 313. Logically, then, an award, to render explicit what the contract negotiators have left implicit, should not only settle present disputes but serve, if possible, as a guide to avoiding future ones.

The difficulty in the present case is that the submission by its terms prevented the arbitrator from looking to the future. As the majority point out, the submission called for an answer to the question whether "the Company's present operating practice" violated the terms of the agreement. It required a precise answer of "Yes" or "No," not a determination of what might in the future constitute a violation of the agreement.