OFFICE OF LABOR RELATIONS *v.* NEW ENGLAND
HEALTH CARE EMPLOYEES UNION,
DISTRICT 1199, AFL-CIO
(SC 17962)

Rogers, C. J., and Katz, Palmer, Zarella and Schaller, Js.

Argued May 19—officially released August 5, 2008

*Richard T. Sponzo*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (plaintiff).

*Michael E. Passero*, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiff, the state office of labor relations, appeals from the judgment of the trial court granting the application of the defendant, New England Health Care Employees Union, District 1199, AFL-CIO, to confirm an arbitration award rendered in favor of

the defendant. In the present appeal, the plaintiff's sole claim is that the arbitrator's award, which granted relief to all employees covered under the collective bargaining agreement between the parties as to the issue raised rather than to the three individual employees who were named as grievants in the submission, exceeded the scope of the submission in contravention of General Statutes § 52-418 (a) (4).[1] We agree with the plaintiff and, accordingly, we reverse in part the judgment of the trial court.

The record reflects the following undisputed facts and procedural history. The plaintiff and the defendant entered into a collective bargaining agreement (agreement) that covered wages, hours and conditions of employment with respect to employees in the bargaining unit of the department of veterans' affairs for the period from July 1, 2001, to June 30, 2005. Pursuant to article twenty-one of the agreement, employees were to be paid time and one-half, in addition to the regular rate of pay, for working on "premium holidays": New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. The agreement further provides that for employees in departments that are in continuous operation, meaning in operation seven days of the week, three of the holi-

---

[1] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

days, New Year's Day, Independence Day and Christmas Day, are to be celebrated on the actual holiday, even if those holidays fall on a weekend and the department celebrates that holiday on a weekday.[2]

The defendant filed grievances on behalf of three employees, Julie Allegra, Christine LaVigne and Susan Kemp, alleging that they had not been paid premium holiday pay in accordance with the agreement for their work, respectively, on New Year's Day in 2005, and Christmas Day and Independence Day in 2004. The plaintiff denied the grievances, and the parties thereafter submitted the matter to arbitration pursuant to article thirty-two, § 7, of the agreement, which provides for final and binding arbitration for disputes arising under the agreement.[3] The parties submitted the following issue to the arbitrator: "Did the [s]tate violate [a]rticle [twenty-one] of the [agreement] in the [s]tate's application of holiday designation and payment of holiday pay to the [g]rievants, [Allegra, LaVigne and Kemp]? If so, what shall be the appropriate remedy, consistent with the [agreement]?"

---

[2] Article twenty-one, § 1, of the agreement provides in relevant part: "For the purposes of this [a]rticle, holidays are as follows:

"(A) Premium Holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas. . . .

"In continuous operations, New Year's Day, Independence Day and Christmas shall be celebrated on January 1, July 4, and December 25 respectively, even if these holidays fall on Saturday or Sunday. Otherwise, if a holiday falls on Saturday or Sunday, it shall be considered celebrated on the day off granted in lieu thereof."

[3] Article thirty-two, § 7, of the agreement provides in relevant part: "The parties established a panel of six . . . arbitrators, who are experienced in health care and public sector labor relations. Submission to arbitration shall be by certified letter to the Labor Relations Director or Union. . . .

"The arbitrator's decision shall be final and binding on the parties in accordance with . . . General Statutes [§] 52-418. The parties reserve their right of judicial review under . . . [§] 52-418."

We also note that article thirty-two, § 8, of the agreement exempts certain issues from the grievance and arbitration procedures, but the parties have not contended that the issue submitted falls within those exceptions.

The arbitrator rendered an award in favor of the defendant. In so doing, the arbitrator expressly cited to a 1998 memorandum issued by Eileen Cantin, a state human resources officer, construing the term "continuous operation." That memorandum, as quoted in the arbitrator's award, provided: " 'Maintenance employees in the Food Services Department and Physical Plant Department . . . are engaged in a continuous operation as regards the union contract. Premium holidays . . . shall be celebrated on January 1, July 4 and December 25 even if it is a Saturday or Sunday and even if the state celebrated holiday is different.' " The arbitrator's award provided: "The [s]tate violated [a]rticle [twenty-one] in its application of the holiday designation for Saturday/Sunday, Independence Day, Christmas and New Year's holidays in 2004. In the future, the [s]tate is directed to apply the 1998 Cantin 'Premium Holidays' memo, as outlined above, to employees covered by the [agreement]."

Thereafter, pursuant to § 52-418 (a) (4), the plaintiff filed a timely application to vacate the award on the ground that the arbitrator had exceeded her authority by issuing an award that did not conform to the scope of the submission because the award directed the plaintiff to apply Cantin's memorandum to all of the employees covered by the agreement, rather than just the three employees who had been named in the submission. The defendant opposed the plaintiff's application and filed a cross application to confirm the award. In its memorandum of decision, the trial court concluded that the question of whether the arbitrator had exceeded her authority was subject to de novo review. The court further concluded that, although the submission had asked the arbitrator to resolve a dispute between the plaintiff and three specific employees, it also had asked her to formulate a remedy that was "consistent with the [agreement]." Thus, the trial court reasoned that

the arbitrator's conclusion that the remedy be applied consistently throughout the entire bargaining unit was in conformance with the agreement and therefore was not *necessarily* outside the scope of the submission. In light of this conclusion, the trial court determined that the arbitrator had not exceeded the scope of her powers in violation of § 52-418 (a) (4). The trial court therefore denied the plaintiff's application to vacate, and granted the defendant's application to confirm the award.

Pursuant to General Statutes § 52-423,[4] the plaintiff appealed from the trial court's judgment to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. On appeal, the plaintiff contends that the submission expressly restricted the arbitrator's authority to deciding the issue of premium pay only as to the employees named in the grievances and the submission. Thus, the plaintiff contends that the award of prospective relief to all of the employees in the bargaining unit exceeded the scope of the submission and must be vacated. The defendant responds that the submission did not restrict the arbitrator's authority to render an award except insofar as it required that the award be "consistent" with the agreement. Accordingly, the defendant contends that the arbitrator was authorized to render an award of prospective relief to all of the employees in the bargaining unit, as the arbitrator clearly determined that such relief is consistent with the agreement. We agree with the plaintiff.

"Arbitration is a creature of contract between the parties and its autonomy requires a minimum of judicial intrusion. . . . The parties themselves, by the

---

[4] General Statutes § 52-423 provides: "An appeal may be taken from an order confirming, vacating, modifying, or correcting an award, or from a judgment or decree upon an award, as in ordinary civil actions."

agreement of the submission, define the powers of the arbitrator. . . . The submission constitutes the charter of the entire arbitration proceedings and defines and limits the issues to be decided. . . . When the parties have agreed to a procedure and have delineated the authority of the arbitrator, they must be bound by those limits." (Citations omitted.) *Bic Pen Corp.* v. *Local No. 134*, 183 Conn. 579, 583–84, 440 A.2d 774 (1981). Thus, the restrictions in the submission define the scope of our judicial review. *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 114, 779 A.2d 737 (2001). When the submission to the arbitrator "contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review," the submission is deemed restricted and we engage in de novo review. *Garrity* v. *McCaskey*, 223 Conn. 1, 5, 612 A.2d 742 (1992); see also *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 83, 881 A.2d 139 (2005). As a general matter, "[w]hen the parties have not restricted the scope of the arbitrator's authority, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission." (Internal quotation marks omitted.) *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 427, 747 A.2d 1017 (2000); see also *Bic Pen Corp.* v. *Local No. 134*, supra, 584 ("[w]here the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that the construction placed on the facts or the interpretation of the agreement by the arbitrators was erroneous" [internal quotation marks omitted]).

If a party specifically contends, however, that the arbitrator's award does not conform to an unrestricted submission in violation of § 52-418 (a) (4), we engage in "what we have termed 'in effect, de novo judicial review.' " *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275

Conn. 84. "[T]hat standard best can be understood when viewed in the context of what the court is permitted to consider when making this determination and the exact nature of the inquiry presented. Our review is limited to a comparison of the award to the submission. Our inquiry generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred. With respect to the latter, we have explained that as long as the arbitrator's remedies were consistent with the agreement they were within the scope of the submission." (Internal quotation marks omitted.) Id., 85–86. "The party challenging the award . . . bears the burden of producing evidence sufficient to demonstrate that the award does not conform to the submission."[5] *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 258 Conn. 116–17.

In light of these principles and the issue presented in this case, it is clear that the typical threshold question of whether the submission is restricted or unrestricted is academic. Both parties essentially ask us to compare the award with the issue submitted to the arbitrator, pointing to no other evidence as grounds to vacate or confirm the award. The parties have not asked us to review the arbitrator's findings of fact, conclusions of law, or interpretation of article twenty-one of the

---

[5] "It is true that the award rather than the finding and conclusions of fact controls and, ordinarily, the memorandum of an arbitrator is irrelevant. *International Union* v. *Fafnir Bearing Co.*, 151 Conn. 650, 654, 201 A.2d 656 (1964). The memorandum, however, may be examined in determining whether an arbitrator has exceeded his authority by making an award beyond the scope of the submission." (Internal quotation marks omitted.) *Waterbury Construction Co.* v. *Board of Education*, 189 Conn. 560, 563, 457 A.2d 310 (1983); see id. (when award was ambiguous as to whether damages awarded on claims included issue outside scope of submission, arbitrators' memorandum examined to determine whether award included damages that were not related to issue within scope of arbitration); accord *Board of Education* v. *AFSCME, Council 4, Local 287*, 195 Conn. 266, 271, 487 A.2d 553 (1985).

agreement. Therefore, regardless of whether we engage in a threshold inquiry of whether the submission is restricted or unrestricted, the standard of review of and considerations related to the ultimate issue are essentially the same.[6] We review the plaintiff's claim that the arbitrator exceeded her authority when she awarded prospective relief to the entire bargaining unit de novo and base our determination on a comparison of the award rendered with the submission to the arbitrator.

Because "[a]rbitration is a creature of contract"; *Bic Pen Corp.* v. *Local No. 134*, supra, 183 Conn. 583; in comparing the award to the submission we have found principles of contract interpretation to be helpful tools. See, e.g., *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 258 Conn. 117–18. We therefore note the following well settled rules. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is

---

[6] We note that the plaintiff contends that, because we are reviewing whether the arbitrator complied with a "restricted submission limiting the issue to be decided by an arbitrator," we may conduct a "broader inquiry beyond the express terms of the submission than would apply to an unrestricted submission." As we have explained, the sole issue before this court is whether the award conforms to the terms of the submission, which in the present case requires simply a comparison of the award rendered with the submission to the arbitrator and entails no more than an interpretation of these two documents. Therefore, we need not consider the plaintiff's contentions that this is a restricted submission and that some broader inquiry is mandated.

clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Internal quotation marks omitted.) *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, 287 Conn. 307, 313, 948 A.2d 318 (2008). Also, "[w]hen interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. See *Tremaine* v. *Tremaine*, 235 Conn. 45, 57, 663 A.2d 387 (1995); *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 175, 622 A.2d 545 (1993); *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 116, 584 A.2d 1172 (1991)." (Internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 118.

Reading the submission as a whole, we conclude that the arbitrator exceeded her authority when she fashioned relief for the entire bargaining unit as opposed to simply the three individuals named in the submission. As the first question unambiguously indicates, the arbitrator was asked to determine whether the plaintiff had violated article twenty-one of the agreement "in [its] application of holiday designation and payment of holiday pay to the [g]rievants, [Allegra, LaVigne and Kemp]." The second question asks, if the arbitrator does find that the plaintiff had misapplied article twenty-one, then what remedy would be "consistent with the [agreement]?" The first question necessarily informs the meaning of the second question as to the remedy because, if we were to read the second question broadly to encompass a remedy for all of the members of the bargaining unit, it effectively would eviscerate the language in the first sentence: "to the [g]rievants, [Allegra, LaVigne and Kemp]." As we have stated previously herein, it is well settled that we read

contracts of this nature in a way that will give effect to every provision and apply a common sense construction of the words used. Thus, the language of the submission and its internal structure indicate that the question of relief was intended to address the harm to the three individual grievants named in the first question.

In cases in which "[t]he question submitted by the parties was specific in form and could have been answered with precision and exactitude," we readily have concluded that an arbitrator who had awarded unrequested relief had exceeded his authority. *Local 1078* v. *Anaconda American Brass Co.*, 149 Conn. 687, 689–90, 183 A.2d 623 (1962); id. ("[t]he arbitrator not only answered the question submitted [specifically, whether, under the terms of the collective bargaining agreement, the employer's practice of using employees who were not members of the collective bargaining unit to perform tasks that generally were performed by collective bargaining unit members violated the agreement] but he also defined a course of conduct which could be followed in the future"); accord *Waterbury Construction Co.* v. *Board of Education*, 189 Conn. 560, 563, 457 A.2d 310 (1983) (concluding that award did not conform to submission when amount in award related to issue not specifically included in detailed list of issues submitted to arbitrator). When the issue is phrased generally, however, an arbitrator has not exceeded his authority as long as the relief awarded is consistent with the scope of the question posed. See, e.g., *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 775 n.7, 790–91, 830 A.2d 729 (2003) (broadly phrased issue of "[w]hether the schedule change implemented by the [department of children and families] violated . . . the collective bargaining agreement and if so, what shall be the remedy, consistent with the agreement" permitted arbitrator to reinstate employees

who had left due to new schedule because that remedy was consistent with agreement [internal quotation marks omitted]); *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 107, 438 A.2d 1171 (1981) ("The submission asked whether the [plaintiff] city was required to promote [the grievant police officers] to the rank of sergeant, and if so, what shall the remedies be. This submission gave the arbitrators broad powers to fashion a remedy. The award provided that one grievant shall be promoted to the rank of sergeant, and two other grievants shall receive retirement benefits commensurate with the rank of sergeant. This was clearly within the limits of the submission."). The issue presented in the submission in the present case was worded specifically such that the arbitrator's relief had to be tailored specifically to remedy that issue, and not to contain prospective relief to unnamed parties.

Indeed, the first question in the submission plainly indicates that Allegra, LaVigne and Kemp were *individual* grievants. Had the defendant sought relief for all members of the bargaining unit collectively, the agreement provides a mechanism to do so in article thirty-two, § 2, which provides in relevant part that "the [defendant] may in appropriate cases submit an 'institutional' or 'general' grievance on its own behalf. . . ." See *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 258 Conn. 118 (contract must be read as whole); see also *Allstate Life Ins. Co.* v. *BFA Ltd. Partnership*, supra, 287 Conn. 313 ("[a] contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction" [internal quotation marks omitted]). Thus, if the defendant had intended to seek relief that applied to the *entire bargaining unit*, it initially could have filed an institutional grievance in order to frame this issue more broadly for arbitration.

For the foregoing reasons, we conclude that the award to all members of the bargaining unit "necessarily falls outside the scope of the submission"; *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 98; and, accordingly, the arbitrator exceeded her authority in rendering such an award.[7] Although the award as to the members of the bargaining unit other than the three grievants, Allegra, LaVigne and Kemp, must be vacated, the plaintiff has made no claim that the arbitrator exceeded her authority as to the award regarding the three individual grievants. In the absence of any such claim, we see no reason to vacate the arbitration award as to Allegra, LaVigne and Kemp, and we, therefore, decline to do so. Cf. *Waterbury Construction Co.* v. *Board of Education*, supra, 189 Conn. 564 (noting that, upon motion pursuant to General Statutes § 52-419, "the court may strike out such portion of an award as is not responsive to the submission if, by so doing, the merits of the portion of the award which is within the submission are not affected" [internal quotation marks omitted]).

The judgment is reversed in part and the case is remanded to the trial court with direction to vacate the arbitration award only as to the members of the bargaining unit not named in the submission; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

[7] Indeed, our conclusion limiting the relief to the question presented is entirely consistent with our decision in *Stratford* v. *International Assn. of Firefighters*, 248 Conn. 108, 125, 728 A.2d 1063 (1999), wherein we held that, "in the absence of a specific contract provision to the contrary, an arbitrator is not bound to follow prior arbitration decisions . . . . Although an arbitrator may find well reasoned prior awards to be a compelling influence on his or her decision-making process, the arbitrator need not give such awards preclusive effect." Accordingly, by submitting a more limited issue to the arbitrator, the parties in the present case took the risk that the arbitrator's conclusion as to three individuals would have no preclusive effect as to future arbitrations involving others in the bargaining unit.