******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

EVEXIA HOLDINGS, INC., ET AL. *v.*
DALE A. GEURTS
(AC 48365)

Moll, Seeley and Westbrook, Js.

*Syllabus*

The plaintiffs appealed from the trial court's judgment denying their applica-
tion to vacate an arbitration award and granting the defendant's motion to
confirm the award, which had been issued in connection with a dispute
regarding the parties' consulting agreement. The plaintiffs claimed, inter
alia, that the court improperly rejected their argument that the arbitrator
manifestly disregarded the law by imposing a constructive trust on certain
shares of stock owned by the plaintiff B. *Held*:

The trial court properly denied the plaintiffs' application to vacate and
granted the defendant's motion to confirm the arbitration award because
the plaintiffs failed to demonstrate that the arbitrator exceeded his authority
or manifestly disregarded the law and the arbitrator's decision to impose
a constructive trust was consistent with the parties' broad, unrestricted
submission to arbitration, as the arbitrator reasonably could have concluded
that, in order to ensure that the defendant received the benefits to which
he was entitled under the consulting agreement, a constructive trust on
B's stock was justified, the arbitrator's failure to award relief for unjust
enrichment did not preclude him from fashioning an equitable remedy neces-
sary to vindicate his findings that the plaintiffs had engaged in bad faith
conduct, breached their fiduciary duties, and violated the Connecticut Unfair
Trade Practices Act (§ 42-110a et seq.) in their dealings with the defendant,
and the plaintiffs failed to establish that the arbitrator was aware of and
chose to ignore some obvious and readily perceived legal principle that
would have precluded the imposition of a constructive trust or otherwise
limited his broad authority to fashion legal and equitable remedies.

Argued October 9—officially released December 23, 2025

*Procedural History*

Application to vacate an arbitration award, brought
to the Superior Court in the judicial district of Stamford-
Norwalk, where the defendant filed a motion to confirm
the arbitration award; thereafter, the case was tried to
the court, *Zingaro, J.*; judgment denying the plaintiffs'
application to vacate the arbitration award and granting
the defendant's motion to confirm the arbitration

award, from which the plaintiffs appealed to this court. *Affirmed.*

*Michael J. Donnelly*, for the appellants (plaintiffs).

*Scott R. Lucas*, with whom was *Douglas J. Varga*, for the appellee (defendant).

*Opinion*

WESTBROOK, J. The plaintiffs, Evexia Holdings, Inc. (Evexia), Evexia Diagnostics, Inc. (EDI), and Kevin K. Bodling, appeal from the judgment of the Superior Court denying their application to vacate an arbitration award rendered in favor of the defendant, Dale A. Geurts, and granting the defendant's motion to confirm the award. The plaintiffs claim that the court improperly rejected their argument that the arbitrator manifestly disregarded the law by imposing a constructive trust on certain shares of stock owned by Bodling that the plaintiffs assert were not directly at issue in the arbitration. We affirm the judgment of the court.

The following facts, as found by the arbitrator, and procedural history are germane to our resolution of the present appeal. Bodling is a chiropractor and the majority shareholder, chief executive officer, and president of Evexia and its subsidiary, EDI.[1] During the period of time at issue, Bodling exercised complete control over Evexia and EDI and conducted business without proper adherence to corporate formalities, including by comingling corporate and personal

---

[1] "Evexia is a Connecticut corporation that conducts business in the wellness industry. Through EDI and other related companies, Evexia provides diagnostic testing products and nutraceuticals to health professionals and organizations to enable their respective clients and customers to diagnose and treat issues to maximize their health. EDI is a Connecticut corporation and a wholly owned subsidiary of Evexia. EDI organizes laboratory testing and functional health reports for patients/clients of various organizations, and offers products such as meals, nutraceuticals, health record management, and educational tools and webinars."

finances.[2] In 2018, the defendant, who is an investor and consultant with a long history in the finance industry, declined Bodling's invitation to invest directly in Evexia but executed a consulting agreement with the plaintiffs dated November 18, 2018 (agreement). The agreement provided, inter alia, that, in exchange for the defendant's services regarding corporate strategies and the restructuring of corporate debt, the plaintiffs would grant the defendant a 10 percent equity stake in Evexia and, beginning on March 15, 2019, would also pay him monthly dividends equaling 2 percent of the prior month's gross revenues of Evexia and its subsidiaries. There was no end date in the agreement with respect to the monthly revenue payments, but the plaintiffs retained an option to buy out their obligation to make the payments, which they never exercised. The agreement also included a personal guaranty of performance from Bodling.

The parties thereafter became dissatisfied with each other's performance under the agreement, and the plaintiffs withheld making the monthly revenue payments to the defendant. In accordance with the agreement's binding arbitration clause,[3] the defendant initiated proceedings with the American Arbitration

[2] The arbitrator made the following findings with respect to Bodling's business practices: "Bodling directs, manages, and exercises complete control over Evexia and EDI and their finances. Bodling has operated the companies informally, (a) failing to observe corporate formalities; (b) failing to maintain accurate books and records; (c) creating inaccurate business records [that] conceal personal use of Evexia and EDI funds; (d) drawing money from Evexia and EDI for personal use and for the use of other entities in which he maintains an interest; (e) employing overlapping ownership, management, and/or personnel between Evexia, EDI and other entities in which he maintains an interest; [f] using common office space, addresses, and/or means of communications for Evexia, EDI and other entities in which he maintains an interest; [and (g)] exercising full and complete business discretion over Evexia and EDI, rendering Evexia neither adequately capitalized nor able to distribute dividends."

[3] The parties' agreement provided in relevant part: "It is acknowledged by the parties that a quick and efficient resolution of all claims, disputes and other matters in question under this Agreement after the Closing ('Dis-

Association (AAA) claiming that, as of that date, he had not received any dividend payments due to him under the agreement. The defendant calculated that, as of March, 2024, the plaintiffs owed him $1,834,000, and he asserted claims against the plaintiffs sounding in breach of contract, breach of guaranty, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, promissory estoppel, negligent misrepresentation, unjust enrichment, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. He sought both monetary damages and declaratory relief. The plaintiffs filed a response denying the defendant's substantive allegations and a counterclaim in which they asserted counts against the defendant for breach of the duty of loyalty, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation, declaratory judgment, breach of contract, breach of the implied covenant of good faith and fair dealing, and a violation of CUTPA.

Attorney Gary Klein was appointed to serve as the arbitrator of the dispute. On June 24, 2024, following a

putes') is critical to the implementation of the terms of this Agreement. In order to effectuate such intent, the parties do hereby establish this Dispute procedure for use during the term of this Agreement. All Disputes shall be subject to this Section, it being the intention of the parties that all such Disputes be subject hereto regardless of any specific reference or absence of such reference to arbitrability herein. Prior to submission of any Dispute for resolution in accordance with this Section, the parties will negotiate in good faith to resolve such Dispute. Only if such parties cannot reach agreement within ten (10) business days of written notice by any party to the other party that a Dispute exists, the Dispute will be submitted for resolution in accordance with the rules and procedures of the American Arbitration Association in Hartford, Connecticut. Upon such Dispute being submitted to the American Arbitration Association for resolution, the arbitrators shall assume exclusive jurisdiction over the Dispute and the decisions of such arbitrators shall be binding upon the parties hereto and may be entered in any court of competent jurisdiction."

Because the agreement was executed after October 1, 2018, it is governed by the provisions of the Revised Uniform Arbitration Act, General Statutes § 52-407aa et seq., rather than General Statutes §§ 52-408 to 52-424, which govern arbitration agreements made before October 1, 2018. See General Statutes §§ 52-407cc and 52-407eee.

one day hearing,[4] the arbitrator issued a "partial final award" (June 24, 2024 award). The arbitrator found, contrary to the arguments made by the plaintiffs, that the parties had entered into a valid and binding contract. The arbitrator fully resolved all of the legal claims before him, finding for the defendant on his claims of breach of contract, breach of guaranty, bad faith, breach of fiduciary duty and a violation of CUTPA. Because the arbitrator found in favor of the defendant on his contract claims, the arbitrator declined to award relief for unjust enrichment or promissory estoppel. The arbitrator also found that the defendant had failed to prove his claim of negligent misrepresentation. Finally, the arbitrator rejected all of the plaintiffs' defenses and all counts of the counterclaim, concluding that they lacked merit.

By way of relief, the arbitrator awarded the defendant compensatory damages in the amount of $1,838,000; punitive damages—both common-law and pursuant to CUTPA—totaling $400,000; prejudgment interest of $422,000; postjudgment interest; costs; and reasonable attorney's fees.[5] The arbitrator, inter alia, also imposed "a constructive trust on Bodling's shares of common and preferred stock in all Evexia entities for the benefit of [the defendant] until the [plaintiffs] satisfy this partial final award and any final award in full." The arbitrator explained that, "[s]hould [the plaintiffs] fail, timely and fully, to pay all amounts due under this partial final award and any final award, then [the defendant] shall

---

[4] At the hearing, the defendant testified and presented fifty-three exhibits; the plaintiffs presented no witnesses or exhibits. Both sides filed posthearing briefs.

[5] On the basis of his findings regarding the corporate governance practices of Bodling; see footnote 2 of this opinion; the arbitrator "pierce[d] the corporate veil" and held the plaintiffs jointly and severally liable for all of the damages awarded.

have the right to seek and obtain a turnover order pursuant to [General Statutes] § 52-356b.”[6] The arbitrator directed the defendant to submit proof of his attorney's fees and costs on or before July 15, 2024, with any response by the plaintiffs due by August 5, 2024. The defendant timely filed an application for attorney's fees and costs with supporting documentation, and the plaintiffs thereafter filed a brief in opposition.

On July 23, 2024, the plaintiffs timely filed an application with the Superior Court to vacate the arbitrator's June 24, 2024 award. According to the plaintiffs, the arbitrator had exceeded his powers in contravention of General Statutes § 52-407ww.[7] Specifically, the plaintiffs asserted that “[t]he award is the result of a gross and manifest disregard and misapplication of clearly controlling legal principles that were well-known to the arbitrator, particularly with respect to the imposition of a constructive trust on property [that] is indisputably owned by [Bodling] and over which [the defendant] has made no claim.”

On August 30, 2024, the arbitrator issued his “final award” (August 30, 2024 award). The August 30, 2024

[6] General Statutes § 52-356b provides in relevant part: “(a) If a judgment is unsatisfied, the judgment creditor may apply to the court for an execution and an order in aid of the execution directing the judgment debtor, or any third person, to transfer to the levying officer either or both of the following: (1) Possession of specified personal property that is sought to be levied on; or (2) possession of documentary evidence of title to property of, or a debt owed to, the judgment debtor that is sought to be levied on.

“(b) The court may issue a turnover order pursuant to this section, after notice and hearing . . . on a showing of need for the order. . . .”

[7] General Statutes § 52-407ww provides in relevant part: “(a) Upon motion to the court by a party to an arbitration proceeding, the court shall vacate an award made in the arbitration proceeding if . . . (4) [a]n arbitrator exceeded the arbitrator's powers . . . .

“(b) A motion under this section must be filed within thirty days after the movant receives notice of the award pursuant to section 52-407ss or within thirty days after the movant receives notice of a modified or corrected award pursuant to section 52-407tt . . . .”

award did not alter or modify the June 24, 2024 award but fully incorporated it by reference. On the basis of the parties' submissions, the August 30, 2024 award ordered the plaintiffs to pay the defendant's costs of $7250.01 and reasonable attorney's fees of $733,055. The plaintiffs did not file an application to vacate the August 30, 2024 award or seek to amend their pending application to vacate the June 24, 2024 award.

On November 5, 2024, the defendant filed a motion to confirm the June 24 and August 30, 2024 awards pursuant to General Statutes § 52-407vv.[8] The court, *Zingaro, J.*, conducted a remote hearing on November 18, 2024, following which it issued orders denying the plaintiffs' application to vacate the June 24, 2024 award and granting the defendant's motion to confirm both the June 24 and August 30, 2024 awards. This appeal followed.[9]

---

[8] General Statutes § 52-407vv provides: "After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 52-407tt or 52-407xx or is vacated pursuant to section 52-407ww."

[9] Prior to oral argument, the defendant filed a motion to dismiss the appeal asserting that this court lacked subject matter jurisdiction over the appeal. The defendant argued in his motion that the trial court lacked jurisdiction to entertain any challenge to the defendant's motion to confirm the arbitration awards because the plaintiffs never timely moved to vacate the August 30, 2024 award, which had incorporated the June 24, 2024 award. The defendant further asserted that, "if the trial court lacks jurisdiction, then [this court] lacks jurisdiction." We denied the motion to dismiss because a challenge to a trial court's jurisdiction or authority to act may be raised as an issue on appeal and ordinarily is not a proper ground for seeking dismissal of an appeal. It is axiomatic that this court has subject matter jurisdiction to determine whether a trial court lacked jurisdiction. See, e.g., *Just Restaurants* v. *Thames Restaurant Group, LLC*, 172 Conn. App. 103, 106, 158 A.3d 845 (2017) (rejecting argument that, "because the trial court lacked jurisdiction, this court also is without jurisdiction"); see also *Belden* v. *Sedgwick*, 68 Conn. 560, 567, 37 A. 417 (1897) ("[t]his court has jurisdiction to review any judgment of the Superior Court from which an appeal is taken on the ground that [the judgment] was void for want of jurisdiction").

In his appellee's brief, the defendant reasserts the same arguments directed at this court's jurisdiction that he made in his motion to dismiss.

After filing the appeal, the plaintiffs filed a motion for articulation with the Superior Court. They asked the court to set forth the factual and legal basis for its decision denying their application to vacate and granting the defendant's motion to confirm the arbitration awards because the court provided no analysis or explanation for its rulings. The court granted the motion and issued an articulation dated March 10, 2025.

With respect to the arbitrator's imposition of a constructive trust, the court stated: "The arbitrator did not award [the defendant] relief for unjust enrichment, reasoning that his finding of breach of contract precluded an award of damages under an unjust enrichment claim. The imposition of a constructive trust is an equitable remedy, but it is not solely relegated to the finding of unjust enrichment. [A] constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . . The issue raised by a claim for a constructive trust is, in essence, whether a party has committed actual or constructive fraud or whether he or she has been unjustly enriched. . . .

"The arbitrator found that the plaintiffs misappropriated corporate assets that were to be distributed to [the defendant] as dividends. These assets were, instead,

---

It is neither necessary nor prudent for us to revisit or reevaluate arguments previously raised and rejected by another panel of this court, and we decline to do so. Cf. *Kellogg* v. *Middlesex Mutual Assurance Co.*, 211 Conn. App. 335, 345–46, 272 A.3d 677 (2022). Any question regarding the trial court's jurisdiction is addressed in conjunction with our resolution of the plaintiffs' claim on appeal.

diverted by the plaintiffs for Bodling's personal benefit, including the formation of new entities and the leveraging of income and stock to the exclusion of [the defendant] in violation of their fiduciary duties. . . . The arbitrator cited the wrongful creation of Evexia related entities by Bodling as an effort to deprive [the defendant] of the benefit of his bargain, as well as ongoing bad faith conduct, as a sufficient basis to support equitable relief and to find violations of [CUTPA]." (Citations omitted; emphasis omitted; internal quotation marks omitted.)

The court subsequently concluded: "The crux of the [plaintiffs'] claim is that the arbitrator exceeded his authority within the meaning of § 52-407ww because he imposed the constructive trust on Bodling stock. The arbitrator found factors [that] support the imposition of the constructive trust. The plaintiff[s] failed to produce evidence sufficient to demonstrate that the arbitrator made an obvious error capable of being readily perceived, that he ignored the governing legal principles or that he ignored a well-defined governing law. The court concludes that the arbitrator's partial final arbitration award does not manifest an egregious or patently irrational application of the law."

The sole claim raised by the plaintiffs is that the court improperly rejected their argument that the arbitrator manifestly disregarded the law by imposing a constructive trust on shares of stock owned by Bodling that, according to the plaintiffs, were not directly at issue in the arbitration. The defendant responds that the arbitrator's imposition of equitable relief in the form of a constructive trust was appropriate and justified on the basis of the arbitrator's findings that the plaintiffs had diverted assets that should have been distributed to the defendant as dividends, including through the formation of new corporate entities and by impermissibly leveraging Evexia stock. We agree with the defendant

that the court properly determined that the plaintiffs have failed to demonstrate that the arbitrator exceeded his authority or manifestly disregarded the law.

We begin with well established principles governing our review. "Because we favor arbitration as a means of settling private disputes, we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitration] award and of the arbitrators' acts and proceedings. . . . Judicial review of [arbitration] decisions is narrowly confined. . . . [If] the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' [arbitration] agreement. . . . This is because [a]rbitration is a creature of contract and the parties themselves, by the terms of their submission, define the powers of the arbitrators." (Citations omitted; internal quotation marks omitted.) *Blondeau* v. *Baltierra*, 337 Conn. 127, 152–53, 252 A.3d 317 (2020). "We review de novo a court's determination [whether] an arbitration award should be vacated on the ground that the arbitrators manifestly disregarded the law." *Torrington* v. *Council 4, AFSCME, AFL-CIO, Local 442*, 232 Conn. App. 45, 57, 336 A.3d 115, cert. denied, 352 Conn. 902, 335 A.3d 65 (2025).

"If the parties have agreed in the underlying contract that their disputes shall be resolved by arbitration, the arbitration clause in the contract is a written submission to arbitration." (Internal quotation marks omitted.) *Ahmed* v. *Oak Management Corp.*, 348 Conn. 152, 186–87, 302 A.3d 850 (2023), cert. denied,      U.S.      , 144 S. Ct. 2520, 219 L. Ed. 2d 1200 (2024). The scope of our

review depends, in large part, on whether the submission to arbitration is restricted or unrestricted. See *Toland* v. *Toland*, 179 Conn. App. 800, 807, 182 A.3d 651, cert. denied, 328 Conn. 935, 183 A.3d 1174 (2018). "The arbitrator's award in an unrestricted submission . . . is considered final and binding; thus the courts will not review the . . . award for errors of law or fact. . . . Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved." (Citation omitted; internal quotation marks omitted.) *Blondeau* v. *Baltierra*, supra, 337 Conn. 153–54.

It is undisputed in the present case that the submission to the arbitrator was unrestricted.[10] See footnote 3 of this opinion; see also *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 87, 881 A.2d 139 (2005) (submission is unrestricted if arbitration clause of agreement requires parties to submit all disputes to arbitration without qualifications); *Zelvin* v. *JEM Builders, Inc.*, 106 Conn. App. 401, 408, 942 A.2d 455 (2008) (courts deem submission restricted only if arbitration clause contains express language that restricts breadth of issues deemed arbitrable, reserves explicit rights, or conditions award on judicial review). The plaintiffs' application to vacate the award asserted that the arbitrator exceeded his authority pursuant to § 52-407ww (a) (4) by imposing a constructive trust as a measure of the relief granted, which, according to the plaintiffs, was in manifest disregard of the law.[11]

---

[10] The plaintiffs do not claim in their appellate briefs that the submission was restricted. Moreover, both parties analyze whether the award should be vacated on the ground that the arbitrator exceeded his statutory authority by virtue of a manifest disregard of the law, which analysis presupposes an unrestricted submission. See *Blondeau* v. *Baltierra*, supra, 337 Conn. 154, citing *Toland* v. *Toland*, supra, 179 Conn. App. 807 n.5.

[11] Section 52-407ww is the successor statute to General Statutes § 52-418, which governs applications to vacate arbitration awards rendered pursuant to an arbitration agreement executed prior to October 1, 2018. See footnote 3 of this opinion. Both statutes provide that a court shall vacate an arbitration award if an arbitrator exceeded the arbitrator's powers. See General Statutes

We adhere to a highly deferential standard in considering whether an arbitration award should be overturned for manifest disregard of the law. *Blondeau* v. *Baltierra*, supra, 337 Conn. 161. "[T]he manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's *extraordinary* lack of fidelity to established legal principles. . . . This level of deference is appropriate because the parties voluntarily have chosen arbitration as a means to resolve their legal dispute. . . . As an essential component of that choice, they have agreed to bypass the usual adjudicative apparatus, including its conventional appellate features, for the advantages that accompany private arbitration. To borrow a phrase from the marriage ceremony, that choice is made for better or for worse, which, in this context, means that the arbitrator's decision is final and binding unless it is manifestly, obviously, and indisputably wrong. Review by a judicial authority is not forfeited entirely, but it is conducted under a different and far less rigorous level of scrutiny.

"Under this highly deferential standard . . . our precedent instructs that three elements must be satisfied before we will vacate an arbitration award on the

§§ 52-407ww (a) (4) and 52-418 (a) (4). In *Garrity* v. *McCaskey*, 223 Conn. 1, 10, 612 A.2d 742 (1992), our Supreme Court stated that "an award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has 'exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.'" In *Harty* v. *Cantor Fitzgerald & Co.*, supra, 275 Conn. 84, our Supreme Court relied on this statement in *Garrity* as support for its determination that "a claim that the arbitrators have manifestly disregarded the law may be asserted under § 52-418 (a) (4) . . . ." Accordingly, it is well established under our § 52-418 jurisprudence that review of whether an arbitrator exceeded the arbitrator's authority can be established in one of two ways: "(1) the award fails to conform to the submission, or, in other words, falls outside the scope of the submission; or (2) the [arbitrator] manifestly disregarded the law." (Internal quotation marks omitted.) *Blondeau* v. *Baltierra*, supra, 337 Conn. 155. We perceive no reason why

ground that the [arbitrator] manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the [arbitrator] appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the [arbitrator] is [well-defined], explicit, and clearly applicable. . . . [E]very reasonable presumption and intendment will be made in favor of the [arbitration] award and of the [arbitrator's] acts and proceedings." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 161–62. The plaintiffs have failed to demonstrate that these elements are satisfied in the present case.

We are not persuaded that the arbitrator's decision to impose a constructive trust under the facts and circumstances before him constituted legal error, let alone the type of obvious and indisputable error that would warrant vacating an arbitration award.[12] The imposition

---

our jurisprudence regarding § 52-418 should not logically also extend to applications to vacate filed pursuant to § 52-407ww.

[12] Because we reject the plaintiffs' claim that the trial court should have vacated the June 24, 2024 award for manifest disregard of the law and affirm the trial court's judgment confirming both the June 24 and August 30, 2024 awards, it is not necessary to address the defendant's argument that the trial court lacked jurisdiction to do anything but confirm the final August 30, 2024 award due to the plaintiffs' failure to file an application to vacate that award. We note nevertheless that the partial June 24, 2024 award fully disposed of all legal claims that were before the arbitrator and, thus, that award was final for purposes of triggering the filing of an application to vacate the award. As part of the relief granted in the June 24, 2024 award, the arbitrator awarded reasonable attorney's fees to the defendant, giving the parties an opportunity to litigate the amount of those fees as well as the amount to be awarded as costs. Just as a civil judgment is final for purposes of appellate review despite an unresolved issue regarding an attorney's fee award; see *O & G Industries, Inc.* v. *American Home Assurance Co.*, 204 Conn. App. 614, 640–41 n.15, 254 A.3d 955 (2021); the arbitrator's June 24, 2024 award was final for purposes of filing an application with the court to vacate that award. The plaintiffs filed an application to vacate the June 24, 2024 award within the thirty day statutory period and, therefore, the court had jurisdiction to consider that application. See *A Better Way Wholesale Autos, Inc.* v. *Saint Paul*, 338 Conn. 651, 660–61, 258 A.3d 1244

of a constructive trust is governed by well established standards. As explained by the trial court in its articulation, "[a] constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." (Internal quotation marks omitted.) "Moreover, the party sought to be held liable for a constructive trust must have engaged in conduct that wrongfully harmed the plaintiff. . . . The imposition of a constructive trust by equity is a remedial device designed to prevent unjust enrichment. . . . Thus, a constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." (Citation omitted; internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 856, 784 A.2d 905, cert. denied, 258 Conn. 946, 788 A.2d 95 (2001), and cert. denied sub nom. *Vernon Village, Inc.* v. *Giulietti*, 258 Conn. 947, 788 A.2d 97 (2001), and cert. denied, 258 Conn. 947, 788 A.2d 96 (2001), and cert. denied sub nom. *Giulietti* v. *Vernon Village, Inc.*, 258 Conn. 947, 788 A.2d 96 (2001).

(2021) (thirty day statutory time limit in General Statutes § 52-420 (b) for seeking to vacate arbitration award, which is analogous to time limit now found in § 52-407ww (b), is subject matter jurisdictional in nature). Once the arbitrator determined the amount of attorney's fees and costs and issued the final August 30, 2024 award, which left fully intact and incorporated the earlier, partial June 24, 2024 award, it was not necessary for the plaintiffs to file a new application to vacate the later award and their failure to do so did not negate the earlier application or rob the court of jurisdiction to consider it along with the defendant's motion to confirm the awards. The only effect of the plaintiffs' failure to file a new application to vacate the later award was to preclude any challenge to the amount of attorney's fees and costs awarded.

Pursuant to the 2022 AAA Commercial Arbitration Rules and Mediation Procedures (AAA Rules), arbitrators, like trial courts of general jurisdiction, enjoy a wide-ranging discretion to fashion appropriate remedies, and an "arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties . . . ." AAA Rule R-49;[13] see *Ahmed* v. *Oak Management Corp.*, supra, 348 Conn. 185; see also *Cianbro Corp.* v. *National Eastern Corp.*, 102 Conn. App. 61, 69, 924 A.2d 160 (2007) ("[An] arbitrator is authorized from [an] unrestricted submission to fashion any remedy that is rationally related to a plausible interpretation of the agreement . . . . Put another way, when the submission is unrestricted, the remedy determined by an arbitrator will be upheld as long as the remedy draws its essence from the . . . agreement." (Internal quotation marks omitted.)). In reviewing the relief granted by an arbitrator in an arbitration award, a court will deem the arbitrator as having exceeded his authority only if

[13] AAA Rule R-49, entitled "Scope of Award," provides: "(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

"(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

"(c) In the final award or any order disposing of all of the case, the arbitrator shall assess the fees, expenses, and compensation provided in [AAA] Rules R-55, R-56, and R-57. The arbitrator may also assess such fees, expenses, and compensation in any order or award disposing of part of the case. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

"(d) The award of the arbitrator may include:

"i) interest at such rate and from such date as the arbitrator may deem appropriate; and

"ii) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or the parties' arbitration agreement."

the submission clearly restricts the type of relief available. See, e.g., *Office of Labor Relations* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 288 Conn. 223, 232, 951 A.2d 1249 (2008) (concluding that arbitrator exceeded authority by fashioning relief for entire bargaining unit rather than limiting relief to those individuals named in submission).

As previously stated, the submission here was unrestricted. The plaintiffs have not directed us to any language in the arbitration clause of their agreement, nor have we found any, that reasonably can be interpreted as limiting the arbitrator's authority to grant a particular type of relief. See, e.g., *Benihana, Inc.* v. *Benihana of Tokyo, LLC*, 784 F.3d 887, 902 (2d Cir. 2015) ("[w]here an arbitration clause is broad . . . arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself" (internal quotation marks omitted)). Here, having found that the plaintiffs breached the parties' agreement, the arbitrator properly refrained from adjudicating the alternative claims of unjust enrichment and promissory estoppel. We agree with the trial court, however, that the failure to award relief for unjust enrichment did not preclude the arbitrator from fashioning an equitable remedy necessary to vindicate his findings that, in their dealings with the defendant, the plaintiffs had engaged in bad faith conduct, breached their fiduciary duties, and violated CUTPA.

The arbitrator, confronted with the facts and circumstances before him, reasonably could have concluded that, in order to ensure the defendant was able to receive the benefits to which he was entitled under the parties' agreement, a constructive trust on Bodling's Evexia and Evexia related stock was justified. As the defendant argues in his appellate brief, "Bodling was found to have enriched himself unjustly by failing to

properly distribute Evexia assets, and the constructive trust prevents him, consistent with the terms of the [parties' agreement], from transferring or disposing of that stock until the Evexia dividends are properly distributed to the defendant." The plaintiffs simply have not established that the arbitrator was aware of and chose to ignore some obvious and readily perceived legal principle that would have precluded the imposition of a constructive trust or otherwise limited the arbitrator's broad authority to fashion both legal and equitable remedies.

In light of the highly deferential and limited nature of our judicial review of arbitration awards and the remedies imposed, we will not second guess the arbitrator's decision to impose a constructive trust, which was consistent with the broad, unrestricted submission. Having reviewed the record and the arguments of the parties, we conclude that the trial court properly denied the plaintiffs' application to vacate and granted the defendant's motion to confirm the June 24 and August 30, 2024 arbitration awards.

The judgment is affirmed.

In this opinion the other judges concurred.